# No. 26-30087

# United States Court of Appeals
# Fifth Circuit

---

SYDNEY PETITE,
*PLAINTIFF/APPELLANT*
VS.
ROBERT C. LOWE; LOWE STEIN, L.L.C.; JEFFERY M. HOFFMAN; HOFFMAN, NGUYEN & KUEHL, L.L.C.
*DEFENDANTS/APPELLEES*

---

CIVIL CASE
APPEAL FROM UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NO. 2:24-CV-2056
HON. IVAN L. R. LEMELLE, *PRESIDING*

---

# APPELLANT'S BRIEF
(AMENDED)

---

RICHARD DUCOTE, ESQ. (LA. 5111)
COUNSEL FOR APPELLANT SYDNEY PETITE
318 EAST BOSTON STREET, FL. 2
COVINGTON, LA 70433
985.898.2755
rducote@ducotelaw.com

## CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**1)** ***Plaintiff / Appellant.***

Sydney Petite (f/n/a Sydney Hinds).

**2)** ***Defendants / Appellees.***

Robert C. Lowe, Esq.

Lowe Stein, LLC.

Jeffrey M. Hoffman, Esq.

Hoffman, Nguyen & Kuehl, LLC.

**3)** ***Members of Defendant /Appellee LLC's.***

Lowe Stein, LLC.

Robert C. Lowe, Esq.
Paula H. Lee, Esq.
Gregory S. Marsiglia, Esq.
Max J. Cohen, Esq.
Melanie C. Lockett, Esq.
Alexandra N. Baird, Esq.

Hoffman, Nguyen & Kuehl, LLC.

Jeffrey M. Hoffman, Esq.
Gordon J. Kuehl, Esq.
Natalie N. Baudouin, Esq.
Michael J. DuBose, Esq.
Mitchell J. Hoffman, Esq.
Kim Ngan Nguyen, Esq.
Sarah J. Flettrich, Esq.
Alexandra E. Faia, Esq.
Emily D. Scroggs, Esq.

**4)** ***Counsel for Plaintiff /Appellant.***

Richard L. Ducote, Esq.

***5) Counsel for Defendants / Appellees.***

Robert C. Lowe, Esq. / Lowe Stein, LLC.

Gustave A. Fritchie, Esq.
Chrsitopher H. Irwin, Esq.
Edward W. Trapolin, Esq.
Irwin Frichie Urquart & Moore, LLC.

Jeffrey M. Hoffman, Esq. / Hoffman Nguyen & Kuehl, LLC.

David S. Daly, Esq.
Elliot M. Lonker, Esq.
Frilot, L.L.C.

Respectfully submitted,
*Richard Lynn Ducote*
Richard Lynn Ducote, Esq. (La. 5111)
Counsel for Appellant

## ORAL ARGUMENT

Appellant Sydney Petite respectfully requests oral argument in this appeal, as given the nuances and intricacies of the central Louisiana state law issues, oral argument would provide the Court with a more robust opportunity to explore and consider the pertinent questions, including certification to the Louisiana Supreme Court.

## TABLE OF CONTENTS

Certificate Of Interested Persons ........................................................................1

Oral Argument.........................................................................................................3

Table Of Authorities................................................................................................6

Jurisdiction ..............................................................................................................9

Issues Presented For Review ................................................................................10

Statement Of The Case .........................................................................................11

Summary Of Argument.........................................................................................17

Argument...............................................................................................................18

1) The District Court legally erred in its "*Erie* guess" determination that Louisiana law required expert testimony to establish that Mr. Lowe and Mr. Hoffman were negligent and, thus, liable for legal malpractice, by failing to advise their client, Sydney Petite, who they clearly knew was a victim of domestic violence at the hands of her ex-husband, of her tort cause of action for compensatory and exemplary damages against him under La. C.C. art. 2315.8 (A). This error centrally contributed to both the wrongful entry of the July 8-9, 2025, summary judgment, and as well as the denial of Ms. Petite's Rule 59(e) motion to alter or amend on January 20, 2026. ............18

2) If this Court's *de novo* review of the District Court's Erie guess does not result in a wholly contrary conclusion that the Louisiana Supreme Court would agree that no such expert testimony is necessary for Ms. Petite's malpractice claim to survive, the Court should certify the question to the Louisiana Supreme Court for a definitive answer. .........................................................................................40

3) The District Court erred in granting the Attorneys' summary judgment motion based on the erroneous *Erie* guess, discussed, *supra*, the wrongful focus on the moot 2019 Lagarde issues, and the erroneous denial of Ms. Petite's motion *in limine*, *infra*; and, in then

denying Ms. Petite's Rule 59(e) motion filed to correct the court's mistaken analysis. .......... 42

4) The District Court abused its discretion in denying Ms. Petite's motion *in limine* to exclude Kyle Schonekas's purported expert opinions attached to Attorney's summary judgment motion. .......... 43

Conclusion .......... 44

Certificate Of Service .......... 45

Certificate Of Compliance .......... 45

# TABLE OF AUTHORITIES

## Cases

*Breaux v. Worrell*, 2025-00856 (La. 4/10/26), 2026 WL 972211 ............................42

*Breaux v. Worrell*, 141 F.4th 712 (5th Cir. 2025) ....................................................41

*Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484 (5th Cir.2023)................................18

*Comardelle v. Penn. Gen. Ins. Co.*, 76 F. Supp. 3d 628 (E.D. La. 2015) ................44

*Congious By and Through Hammond v. Shaw*, 170 F.4th 960 (5th Cir. 2026)..........43

*Cuevas Machine Co. v. Calgon Carbon Corp.*, 2026 WL 1020559
(5th Cir. 2026)..............................................................................................42

*Davis v. United Parcel Service, Inc.*, 427 So.2d 921 (La. App. 3 Cir. 1983),
*writ den.*, 433 So.2d 1053 (La. 1983)..................................................................29

*Duck v. McClure*, 36,045 (La. App. 2 Cir. 5/8/02), 819 So.2d 1070 .......................20

*Duplechin v. Toce*, 85-1243 (La. App. 3 Cir. 11/5/86) ...........................................20

*Erie R.R. v. Tomkins,* 304 U.S. 64, 58 S.Ct. 817 (1938) .........................................18

*Gibson, Inc. v. Armadillo Distrib. Enterprises*, 107 F.4th 441 (5th Cir. 2024)..........43

*Gremillion v. Caffey*, 71 So.2d 670 (La. App. 1 Cir. 1954) ....................................20

*Guerrera v. United Fin. Cas. Co.*, 161 F.4th 913 (5th Cir. 2025)..................... 26, 40

*Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007); ...............................................44

*Haydel v. Mollere,* 24-566 (La. App. 5 Cir. 4/23/25), 414 So. 3d 1........................31

*Jennings v. Watson*, 11 F.4th 335 (5th Cir. 2021) ....................................................43

*Johnson v. Miller*, 98 F.4th 580 (5th Cir. 2024) .......................................................42

*Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847
(5th Cir. 2019)...............................................................................................33

*Laughlin v. Breaux*, 86-1085 (La. App. 1 Cir. 1987), 515 So.2d 480 ......................20

Louisiana Civil Code Article 2315.8 (A)....................................................................19

*MB Industries, LLC v. CNA Insurance Co.*, 74 So.3d 1173 (La. 2011)............ 23, 24

*Morgan v. Simon*, 2000-1556 (La. App. 3 Cir. 2/28/01), 780 So. 2d 626................28

*Muse v. St. Paul Fire and Marine Insurance Company*, 328 So.2d 698
(La.App. 1st Cir. 1976)...........................................................................................27

*Myhre v. Erler*, 90-672 (La. App. 5 Cir. 2/14/91), 575 So.2d 591...........................20

*Poche v. Fernandez*, 386 So.2d 418 (La. App. 4 Cir. 1973)...................................20

*Prestage v. Clark*, 97-0524 (La. App. 1 Cir. 12/28/98)..........................................28

*Ramp v. St. Paul Fire & Marine Ins. Co.*, 263 La. 774, 269 So. 2d 239
(1972)............................................................................................................ 22, 26

*Rock v. ATPIC Trucking Co.*, 98-1420 (La. App. 1 Cir. 6/25/99),
739 So. 2d 874..........................................................................................................28

*Sanders v. Boeing Co.*, 68 F.4th 977 (5th Cir. 2023)................................................41

*Schindler v. Dravo Basic Materials Co. Inc.*, 2019 WL 446567
(E.D. La. February 5, 2019) ....................................................................................44

*Smith v. Becnel*, 396 So.2d 444 (La. App. 4 Cir. 1981) ..........................................30

*Viccinelli v. Causey*, 401 So.2d 1243 (La. App. 1 Cir. 1981), *writ den.*,
409 So.2d 615 (La. 1981).........................................................................................27

*Watkins v. Sheppard*, 278 So.2d 890 (La. App. 1 Cir. 1973) ..................................27

*Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999).......................................................44

**Statutes**

28 U.S.C. § 1332 (a)(1)...................................................................................8, 18

28 U.S.C. §1291..........................................................................................................9

**Other Authorities**

Camille Carey, *Domestic Violence Torts: Righting a Civil Wrong*, 62 U. KAN. L. REV. 695 (March, 2014) ....................34

Clare Dalton, *Domestic Violence, Domestic Torts and Divorce, Constrains and Possibilities*, 31 NEW ENGLAND L. REV. 319 (1997) ....................33

Isabella Scott, DOMESTIC VIOLENCE PRACTICE AND PROCEDURE §§2:234 & 2:237....................35

James T.R. Jones, *Integrating Domestic Violence Issues Into the Law School Torts Curriculum*, 47 (1) LOY. L. REV. 59 (Spring, 2001) ....................33

Kristyn J. Krohse, *No Longer Following the Rule of Thumb—What to Do With Domestic Torts and Divorce Claims,* 1997 U. ILL. L.REV. 923 (1997)....................33

Mercedes Fort, *A New Tort: Domestic Violence Gets the Status it Deserves in Jewitt v. Jewitt*, 21 S. ILL. LAW J. 355 (1997)....................33

Meredith L. Taylor, *North Carolina's Recognition of Tort Liability for the Intentional Infliction of Emotional Distress During Marriage*, 32 WAKE............... FOREST L. REV. 1261 (1997) ....................33

Nick Roumel & Lillian K. Saba, *Marital Torts Can Be a Valuable Tool in a Divorce Case,* 98-JUL MICH. B.J. 22 (July, 2019)....................34

R. Keith Perkins, DOMESTIC TORTS: CIVIL LAWSUITS ARISING FROM CRIMINAL CONDUCT WITHIN FAMILY RELATIONSHIPS § 1.12 ....................34

R. Keith Perkins, *Remember: Intimate Partner Violence Creates Domestic Tort Claims*, 47 FALL FAM. ADV. 24, 24-27 (Fall, 2024) ....................35

**Rules**

La. C.C. art. 2315.8 (A) ....................11, 17, 19, 18, 25, 33

La. Civil Code art. 2315.8....................43

## JURISDICTION

The District Court's original jurisdiction arose under 28 U.S.C. § 1332 (a)(1), as Sydney Petite, the Appellant-Plaintiff, is an Alabama citizen; all Appellee-Defendants are Louisiana citizens; and the amount in controversy exceeds $75,000, excluding cost and interest, all as shown in Ms. Petite's complaint. ROA.10.

This Court's jurisdiction to consider this appeal from the District Court's final judgment in this civil case derives from 28 U.S.C. §1291, and Rules 3-4, F.R.A.P. On July 8, 2025, the court entered *Order and Reasons,* ROA.768-779, granting the Appellee attorneys' joint motion for summary judgment, followed on July 9, 2025, by the *Judgment* dismissing all claims asserted by Ms. Petite with prejudice. ROA.780. On July 31, 2025, Ms. Petite filed her Rule 59(e) *Motion to Alter or Amend Judgment*, ROA. 781-797, which the court denied on January 20, 2026. ROA.804-807. On February 17, 2026, Ms. Petite timely filed her *Notice of Appeal*. ROA.808.

## **ISSUES PRESENTED FOR REVIEW**

1) Did the District Court err in its *Erie* guess that, under Louisiana law, Ms. Petite was required to support her legal malpractice claims with an expert opinion?

2) Should the question of whether, under Louisiana law, Ms. Petite was required to support her legal malpractice claims with an expert opinion be certified to the Louisiana Supreme Court?

3) Did the District Court err in granting the Appellee attorneys' summary judgment motion based on its *Erie* guess concerning the need for expert testimony, the denial of the motion *in limine*, and its focus on the moot 2019 Lagarde issues?

4) Did the District Court abuse its discretion or legally err in denying Ms. Petite's Rule 59(e) motion to alter or amend the July 9, 2025, summary judgment dismissing her legal malpractice claims with prejudice?

5) Did the District Court abuse its discretion in denying Ms. Petite's motion *in limine* to exclude Kyle Schonekas's purported expert opinions?

## STATEMENT OF THE CASE

This is a Louisiana legal malpractice case. On August 22, 2024, Appellant Sydney Petite filed her *Complaint for Compensatory Damages-Legal Malpractice*, with a jury trial demand, against Appellee attorneys Robert C. Lowe and Jeffrey M. Hoffman ("Attorneys'), and their respective law firms.[1] ROA.10-17. Ms. Petite centrally alleged that she and her ex-husband Colin Hinds have three sons, and that they were divorced on January 5, 2021. She further asserted that she was continuously physically abused by Mr. Hinds during her marriage, which was documented in the court records in the litigation proceeding in the 22nd Judicial District court in St. Tammany Parish, and in the Civil District Court in Orleans Parish. The Attorneys continuously represented her from March, 2020, -May, 2024.

The elements of Ms. Petite's legal malpractice complaint are: 1) Attorneys Lowe and Hoffman were well-aware of the domestic abuse committed against her by Mr. Hinds; 2) under Louisiana law, La. C.C. art. 2315.8 (A), Ms. Petite had a viable tort cause of action for lucrative compensatory and exemplary damages against Mr. Hinds during the time that Attorneys represented her; 3) Ms. Petite did not know of her La. C.C. art. 2315.8 (A) cause of action against Mr. Hinds; 4) Attorneys Lowe and Hoffman never informed Ms. Petite that she could sue Mr.

[1] The Attorneys' respective law firms were parties to every pleading filed by the individual Appellee attorney, but, for simplicity, only the individual attorneys are referenced when a particular pleading is discussed.

Hinds for compensatory and exemplary damages under La. C.C. art. 2315.8 (A); 5) Attorneys Lowe and Hoffman had a legal duty to so inform her of her tort cause of action against Mr. Hinds; 6) because Attorneys Lowe and Hoffman never informed her of her tort cause of action, she never filed suit against Mr. Hinds for compensatory and exemplary damages, and her cause of action, therefore, prescribed in January, 2023; 7) Attorneys' failure to inform her of her cause of action, which consequently prescribed, was legal malpractice under Louisiana law; 8) Attorneys' malpractice caused Ms. Petite $3,000,000 in lost damages, for which Attorneys are liable. ROA.10-17.

On October 8, 2024, Mr. Hoffman answered the complaint, and then counter claimed against Ms. Petite for legal fees she supposedly owed him. ROA. 44-210. In his answer, Mr. Hoffman contended that her tort claim had already been dismissed by Ms. Petite when he began representing her. ROA.45-46. On October 21, 2024, Mr. Lowe filed his answer, in which he, too, asserted that Ms. Petite's underlying tort claim against Mr. Hinds had already been compromised prior to his involvement. ROA. 212-216. Ms. Petite answered Mr. Hoffman's counterclaim on November 4, 2024, and denied that she owed him any fees. ROA.283-285.

The litigation of the dispositive motions[2] which eventually resulted in this appeal began on October 31, 2024, when Attorneys filed a joint Rule 12 (b)(6) motion to dismiss Ms. Petite's complaint based on their position that Ms. Petite had already voluntarily dismissed any tort claim she had against Mr. Hinds back in 2019, while she was represented by attorney Jesse Lagarde. ROA. 218-282. On November 12, 2024, Ms. Petite filed an opposition to the joint motion to dismiss, and, therein, showed that under Louisiana law the custody consent judgment she executed in 2019 could not, and did not, as a matter of Louisiana law, extinguish or dispose of her tort claim against Mr. Hinds. ROA.299-310. On November 14, 2024, Attorneys filed a reply memorandum reiterating their same argument supporting their motion to dismiss, but, now adding new exhibits from the state court records. ROA.392-400. Next, Ms. Petite on November 26, 2024, Ms. Petite filed a sur-reply memorandum, again reiterating that there was absolutely no compromise or dismissal of her tort claim while she was represented by Jesse Lagarde in 2019. ROA.401-406.

In an abundance of caution, given the Attorneys' defense, apparently speciously contrived *post hoc*, that her tort claim had been compromised by her prior attorney Jesse Lagarde, Ms. Petite, over the Attorneys' objection, on January 29, 2025, amended her complaint to include <u>only an alternative claim</u> that, if her tort

[2] On November 5, 2024, a scheduling conference was held to set dates for the trial, pre-trial, and the discovery cutoff. However, these dates are irrelevant to this appeal. ROA.286-288.

claim was unwittingly compromised while Jesse Lagarde represented her, and that Attorneys never informed her of her tort claim because they always knew of that disposition, then the Attorneys were negligent in failing to advise her that she should sue Lagarde for malpractice. ROA.413-420. Attorneys Lowe and Hoffman answered the amended complaint on March 12 and March 20, 2025, respectively. ROA.421-432.

On May 2, 2025, Judge Lemelle filed his *Order and Reasons* denying Attorneys' motion to dismiss, specifically finding that the 2019 pleadings filed in the state court custody case, while Jesse Lagarde, was her lawyer, did not, under Louisiana law, compromise Ms. Petite's tort claim against her ex-husband, nor was Ms. Petite's suit against Attorneys Lowe and Hoffman precluded by *res judicata*. ROA.442-452.

Then, on May 16, 2025, Attorneys filed a joint motion for Rule 56 summary judgment motion clearly mostly premised on Ms. Petite's failure to support her legal malpractice claims with expert testimony, but substantively a) again invoking the 2019 Jesse Lagarde pleadings, and b) asserting that they had no duty to advise her of any potential tort claim against her ex-husband when they were not retained for that purpose and Ms. Petite never asked them about a tort claim. Attached to the motion was an affidavit from their purported expert, attorney Kyle Shonekas. ROA.466-651. In response, first on May 27, 2025, Ms. Petite filed a motion *in*

*limine* to exclude Mr. Shonekas's affidavit because a) he has no experience in domestic relations litigation, domestic violence cases, or personal injury cases; b) his report is simply a legal brief offering inadmissible legal opinions, and c) his opinion about the Jesse Lagarde situation is irrelevant and moot because Judge Lemelle had already on May 2, 2025, ruled in Ms. Petite's favor on the 2019 compromise/*res judicata* issue. ROA.652-666. On June 3, 2025, Attorneys opposed the motion *in limine*. ROA.714-723. On June 18, 2023, Judge Lemelle denied the motion *in limine*, ruling:

> Expert opinion testimony, at issue, shall be limited to describing the standard of care required of an attorney in similar circumstances as here and whether the standard of care was met or not. That testimony shall not offer an opinion on "liability." Movant's attempt to limit an expert on attorney malpractice to only attorneys who have experience in family law matters is misplaced. It would instead be a proper subject for cross examination. ROA.736.

On June 2, 2025, Ms. Petite filed her opposition to the summary judgment motion, wherein she a) cited abundant authority imposing the Attorneys' duty to properly inform her of her viable tort claim against her ex-husband, especially given their publicized experience in these sorts of cases; b) argued again that the Shonekas report was inadmissible; and, c) submitted compelling jurisprudence showing that Louisiana law did not require expert testimony supporting her malpractice claim. ROA.667-713.

On July 8, 2025, Judge Lemelle, in a very puzzling decision, issued his *Order and Reasons,* ROA.768-779, granting Attorneys' summary judgment motion based on the mistaken belief that Ms. Petite's claims of malpractice were rooted in a) the Attorney's "*duty to explain the effect of the 2019 Consent Judgment and its effect on plaintiff's 'financially valuable cause of action'*"; and b) the Attorneys' breach of "*their duty to inform her of her malpractice claims against her previous attorney, Jesse Lagarde*." ROA.774-779. To the contrary, those two points were *only alternative claims* asserted in the amended complaint, but the original and primary basis for the suit, that the Attorneys never told her that she could sue her ex-husband in tort, always remained the primary claim in the amended complaint. ROA.413-420. Of course, Judge Lemelle, in denying the Attorneys' Rule 12 (b)(6) motion to dismiss on May 2, 2025, already rejected the Attorneys' misguided arguments regarding the significance of anything happening in 2019 on Jesse Lagarde's watch. ROA.442-452. The absence of expert testimony supporting Ms. Petite's claim was a minor point in the court's analysis, which was consistently focused on the moot Lagarde issue. ROA.778-779. A judgment dismissing all of Ms. Petite's claims was entered on July 9, 2025. ROA.780.

In response to the ruling based on the moot alternative 2019 Jesse Lagarde allegations, which were only first interjected by Attorneys, Ms. Petite on July 31, 2025, filed a Rule 59(e) motion to alter or amend the July 9, 2025, *Judgment*. ROA.

781-797. On August 13, 2025, Attorneys filed their opposition to the Rule 59(e) motion. ROA.799-803. Judge Lemelle did not deny the Rule 59(e) motion until January 20, 2026, when his *Order and Reasons* discounted the claim that he earlier focused on the moot 2019 Lagarde scenario, and ultimately relied on Ms. Petite's lack of any expert testimony to support her malpractice suit. ROA.804-807.

This appeal follows.

## **SUMMARY OF ARGUMENT**

Louisiana state law dictates whether a client suing her attorneys for legal malpractice must support her claim with an expert witness opining on the attorney's negligence, or whether the attorney's act or omission is sufficiently obvious that no expert testimony is required. In this case, the failure of Ms. Petite's experienced attorneys handling her divorce and custody case, who knew that she was a victim of domestic abuse during her marriage to her ex-husband, to simply inform her of her tort claim against her ex-husband under La. C.C. art. 2315.8 (A) for compensatory and exemplary damages, was an obvious breach of their legal duty to her, which a lay jury could understand and determine without the necessity of an expert opinion. Therefore, Louisiana law did not require any expert testimony for her legal malpractice suit to survive.

Furthermore, Judge Lemelle legally erred and abused his discretion in granting the summary judgment based on his mistaken focus on a moot issue

regarding Ms. Petite's prior attorney's involvement, and, likewise, abused his discretion in denying Ms. Petite's Rule 59(e) motion to alter or amend the judgment filed to correct the trial court's flawed basis for granting the Attorneys' summary judgment motion on July 8, 2025.

Finally, the trial court legally erred and abused its discretion in denying the motion *in limine* to exclude Kyle Shonekas's purported expert opinions.

## ARGUMENT

**1) The District Court legally erred in its "*Erie* guess" determination that Louisiana law required expert testimony to establish that Mr. Lowe and Mr. Hoffman were negligent and, thus, liable for legal malpractice, by failing to advise their client, Sydney Petite, who they clearly knew was a victim of domestic violence at the hands of her ex-husband, of her tort cause of action for compensatory and exemplary damages against him under La. C.C. art. 2315.8 (A). This error centrally contributed to both the wrongful entry of the July 8-9, 2025, summary judgment, and as well as the denial of Ms. Petite's Rule 59(e) motion to alter or amend on January 20, 2026.**

In this diversity of citizenship case, with jurisdiction derived from 28 U.S.C. § 1332 (a)(1), the District Court must apply Louisiana substantive law under the doctrine enshrined in *Erie R.R. v. Tomkins,* 304 U.S. 64, 58 S.Ct. 817 (1938). The District Court's determination of controlling Louisiana state law is referred to as an "*Erie guess*," the correctness of which this Court reviews *de novo. Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484, 493 (5th Cir.2023); *Cuevas Machine Company v. Calgon Carbon Corporation*, ___ F.4th ___, 2026 WL 1020559, *3 (5th Cir. 2026).

Here, the trial court's *Erie* guess concluded that Ms. Petite was required to support her legal malpractice claim by expert testimony to survive summary judgment. However, Ms. Petite submits that this proposition is clear legal error, because a) there is no applicable Louisiana statute; b) there is no Louisiana Supreme Court case in any way sufficiently close to these facts to support such a conjecture; and c) principles articulated in Louisiana Supreme Court and Louisiana intermediate appellate court jurisprudence undermine or contradict the trial court's *Erie* Guess.

To recap, Ms. Petite sued her very experienced Louisiana domestic relations attorneys, Robert Lowe and Jeffrey Hoffman, who were representing her in her New Orleans divorce and child custody case, the central allegations in which, as argued by her attorneys, were that Ms. Petite was abused during her marriage to her ex-husband. Her legal malpractice complaint alleges that these attorneys never advised her that she could have sued her husband in tort under Louisiana Civil Code Article 2315.8 (A)[3], and, consequently, her tort claim against her ex-husband prescribed and her chance for a lucrative financial recovery was forever lost. The simple predicate

[3] **ART. 2315.8. LIABILITY FOR DAMAGES CAUSED BY DOMESTIC ABUSE**

A. In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton and reckless disregard for the rights and safety of a family or household member, as defined in R.S. 46:2132, through acts of domestic abuse resulting in serious bodily injury or severe emotional and mental distress, regardless of whether the defendant was prosecuted for his or her acts.

legal question posed in this context is whether her attorneys had a simple duty to so timely advise her of her La. C.C. art. 2315.8 cause of action. Ms. Petite posits that this basic professional duty is sufficiently obvious, or determinable by a lay jury, that it need not be confirmed by any expert testimony, and argues that the Louisiana Supreme Court would so agree. Although this Civil Code article adding *exemplary damages* to compensatory damages was first enacted in 2014, under La. C.C. art. 2315[4] domestic violence tort suits were litigated, and compensatory damages awarded, long before that date. In *Gremillion v. Caffey*, 71 So.2d 670 (La. App. 1 Cir. 1954), the appellate court held that an ex-wife had a cause of action against her ex-husband for assault and battery he committed against her during the marriage, although she had to wait until the divorce was granted before she filed suit. Later, in *Duplechin v. Toce*, 85-1243 (La. App. 3 Cir. 11/5/86), 497 So.2d 763, *writ den.*, 86-2372 (La. 1/9/87), 499 So.2d 86 (Mem), the court affirmed a $52,000 judgment awarded to a woman suing her ex-husband for several acts of abuse during their marriage. Furthermore, in *Myhre v. Erler*, 90-672 (La. App. 5 Cir. 2/14/91), 575 So.2d 591, the appellate court reiterated that a wife could sue her ex-husband for beating her once they were divorced. Another unmarried woman was awarded

[4] All assault and battery tort liability emanates from La. C.C. art. 2315. *See, e.g., Poche v. Fernandez*, 386 So.2d 418 (La. App. 4 Cir. 1973); *Duck v. McClure*, 36,045 (La. App. 2 Cir. 5/8/02), 819 So.2d 1070.

damages from her abusive ex-boyfriend in *Laughlin v. Breaux*, 86-1085 (La. App. 1 Cir. 1987), 515 So.2d 480.

Initially, in the *Order and Reasons*, ROA.768-779, granting the defendant attorneys' summary judgment motion on Julu 8, 2025, Judge Lemelle first wrote:

> In Louisiana courts plaintiffs regularly retain expert witnesses to both establish the standard of care or duty and breach elements of a legal malpractice claim. *See MB Indus., LLC*, 74 So. 3d at 1184; *Bradford v. Gauthier, Houghtaling & Williams, LLP*, No. CIV.A. 13-2407, 2014 WL 4425743 (E.D. La. Sept. 8, 2014), *aff'd sub nom. Bradford v. L. Firm of Gauthier*, 633 F.App's 276 (5th Cir. 2016). One exception where expert testimony is not required to establish a standard of care occurs when "the alleged legal malpractice is 'obvious' or the defendant attorney committed 'gross error.'" *MB Indus., LLC*, 74 So. 3d at 1185. As the plaintiff has not filed any expert testimony, the resolution of the instant motion turns on whether defendants' alleged negligent conduct rises to this level of obviousness. Examples of when Louisiana courts have deemed acts to be sufficiently obvious such that expert testimony is not required, include: "delivering a box of the client's document production to opposing counsel without first making copies; failing to appear and defend the client at a hearing; failing to investigate the date of an accident and allowing the claim to prescribe." *Bradford*, No. 13-2407 at *2 (citing *Frisard v. State Farm Fire & Cas. Co.*, 979 So. 2d 494, 498 (La.Ct.App. 1st Cir. 2007); *Watkins v. Sheppard*, 278 So. 2d 890, 892 (La.Ct.App. 1st Cir. 1973); *MB Indus., LLC*, 74 So. 3d at 1185.). Whereas situations that call for the "'exercise of professional judgment' require expert testimony in order for a jury to glean whether they fall below the standard of care of attorneys in the relevant locality." *Bradford*, No. 13-2407 at *2 (citing *Houllion v. Powers & Nass, et al.*, 530 So. 2d 680, 683 (La.Ct.App. 4th Cir. 1988); *Crescent City Prop. Redevelopment Ass'n, LLC v. Hardy*, 2011-1292 (La.App. 4 Cir. 4/18/12), 89 So. 3d 1270, *writ denied* 2012-1429 (La. 10/8/12), 98 So. 3d 859). Situations which are deemed to require expert testimony, "as they are too ambiguous to be easily recognized as malpractice by a lay jury, include: failing to timely file exceptions; failing to file a motion for summary judgment; failing to object to discovery pleadings;

> advising a client to sign a compromise; failing to seek a hearing; failing to include certain additional claims in the petition; withdrawing for the case only a few months before trial; missing deadlines to add defendants or request a jury trial; failing to ask certain questions of witnesses at trial; failing to call certain witnesses to testify; and failing to obtain an expert witness." *Bradford*, No. 13-2407 at *2 (citations omitted).

Later, in the January 20, 2026, *Order and Reasons* denying Ms. Petite's Rule 59(e) *Motion to Alter or Amend Judgment*, ROA. 804-807, the District Court explained:

> The Court found that Louisiana law required that plaintiffs bringing a malpractice claim must retain expert witnesses to establish the appropriate standard of care unless the breach of duty was obvious or a gross error. *Id*. at 5 (citing *MB Indus., LLC v. CNA* Ins. Co., 2011-0303 (La. 10/25/11) 74 So. 3d 1173, 1184). Because Petite failed to provide expert testimony, the case turned on whether the defendant attorneys' alleged negligent conduct rose to the level of obviousness. The Court did not find any obvious or gross legal malpractice, and therefore held that "[t]he claims in the instant matter are not cognizable. The lack of expert testimony is also fatal to Petite's claims[.]" *Id*. at 12.

The seminal Louisiana Supreme Court legal malpractice case articulating the broad parameters of the obligations imposed on every lawyer, even without reliance on supporting expert opinion, is *Ramp v. St. Paul Fire & Marine Ins. Co*., 263 La. 774, 786–87, 269 So. 2d 239, 244 (1972):

> An attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality. He is not required to exercise perfect judgment in every instance. <u>However, the attorney's license to practice and his contract for employment hold out to the client that he possesses certain minimal skills, knowledge, and abilities.</u> The fact that an attorney's judgment in

> confecting contracts, handling suits, and doing other business may result in litigation is not, in and of itself, a breach of a duty to the client. Risk of future litigation is often a necessary element or result of legal advice and legal representation. The very fact of litigation is a result of the disparity of professional judgment of those in the legal profession. However, lawyers are obligated to scrutinize any contract which they advise their clients to execute, and are required to disclose the full import of the instrument and the possible consequences that may arise upon execution of it.
>
> According to the expert testimony in this case, every lawyer undertaking to advise clients on succession rights must know the basic concepts of forced heirship, which include a child's right to his legitime free and unencumbered except where the heir's other parent is a surviving spouse with a legal or testamentary usufruct on his forced portion. Moreover, even without expert testimony we would necessarily take notice that a legal duty is breached when the attorney fails to recognize such an obvious encroachment upon the legitime and to properly advise clients in that regard when they seek to recover all that they can from their parent's estate. We therefore conclude that Plotkin and Nelkin breached a legal duty to these plaintiffs [emphasis added].

Another Louisiana Supreme Court case cited by Judge Lemelle below as a cog in his *Erie* guess is much more helpful to Ms. Petite's argument here. In *MB Industries, LLC v. CNA Insurance Co*., 74 So.3d 1173, 1185-1187 (La. 2011), the court explained the sort of legal malpractice requiring no expert testimony to establish:

> MBI's failure to introduce the testimony or affidavit of an expert witness is not necessarily fatal to its claim. In *Ramp v. St. Paul Fire & Marine Ins. Co.,* 263 La. 774, 269 So.2d 239 (1972), this Court recognized (albeit in *dicta)* that expert testimony is not necessary where

> the alleged legal malpractice is "obvious" or the defendant attorney committed "gross error." *Id.* at 244. Indeed, the *Ramp* court suggested an attorney's malpractice could be so obvious as to be the subject of judicial notice. *Accord, Frisard v. State Farm Fire & Cas. Co.,* 06–2353 (La.App. 1 Cir. 11/2/07) 979 So.2d 494, 498 (attorney's failure to appear is obvious negligence and no expert testimony is needed); *Schlesinger v. Herzog,* 95–1127 (La.App. 4 Cir. 4/3/96), 672 So.2d 701, 708 ("judicial notice of obvious legal negligence could be taken regardless of expert testimony"); *Watkins v. Sheppard,* 278 So.2d 890, 892 (La.App. 1 Cir.1973).
>
> * * *
>
> There is one allegation of malpractice on the part of Durio's firm which is so egregious that a reasonable lay jury could infer his actions fell beneath any reasonable standard of care. In March 2001, Fred Gossen gave Durio a box containing a significant amount of documentary evidence including "all relevant agreements, contracts, documents, legal strategy, and other sensitive, confidential and attorney/client privileged information." The documents were given to opposing counsel as part of plaintiff's document production. However, Durio's associate failed to make any copies of the documents first. For two years, the whereabouts of this box was unknown. Although Gossen and Durio eventually managed to recover many of the documents, some remained missing, and the recovered documents were unorganized and out of order. A reasonable lay jury could certainly find handing over a box of client documents without making copies is negligent under any standard. Thus, no expert testimony was necessary to establish these actions fell below the applicable standard of care.

There is, however, more significance to be found in *MB Industries, LLC, supra,* than shown in the majority opinion, which held that an expert opinion was necessary to support only four (4) of the (5) legal malpractice allegations. Again, as quoted above, the Supreme Court found no need for an expert to opine, for this one issue, that an attorney has a legal duty to make copies of important documents before sending them off to the opposition. Notably, though, going much further in her

concurring and dissenting opinion, Justice (later Chief Justice) Johnson said, at 74 So.3d 1173, 1187-1188:

> However, I respectfully disagree with the majority's finding that summary judgment is proper in this case. The majority generally holds that a party alleging legal malpractice must introduce expert testimony to establish the standard of care except in those rare cases involving malpractice so egregious that a lay jury could infer the defendant's actions fell below any reasonable standard of care. The majority equated this principle to the one applied in medical malpractice cases. I find such application and comparison to be inappropriate. La. R.S. 9:2794 sets forth statutory requirements in medical malpractice cases addressing the standard of care and burden of proof. However, no such statutory requirements exist in legal malpractice cases. As the majority points out, our jurisprudence has provided that to establish a claim for legal malpractice, a plaintiff must prove: 1) the existence of an attorney-client relationship; 2) negligent representation by the attorney; and 3) loss caused by that negligence. *Teague v. St. Paul Fire & Marine Ins. Co.,* 07–1384 (La.2/1/08), 974 So.2d 1266, 1272 (citing *Costello v. Hardy,* 03–1146, p. 10 (La.1/21/04), 864 So.2d 129, 138). Unlike medical malpractice cases, there is no requirement that a plaintiff prove the standard of care in legal malpractice cases, and there is no corresponding requirement of expert testimony to prove standard of care.
>
> In my view, it is error to enter summary judgment in this case based on the Plaintiff's failure to submit expert testimony to prove the standard of care. Therefore, I would affirm the court of appeal's decision.

Because Justice Johnson's argument disclaiming the requirement of supporting expert opinions in any malpractice case has never been openly refuted, or even pointedly criticized, in the intervening fourteen (14) years of Supreme Court opinions, any *Erie* guess that Ms. Petite's suit against her lawyers is fatally flawed because no expert said that they should have told her about her La. C.C. art.

2315.8(A) tort claim is, indeed, only an untenable conjecture, speculation, and suspicion lacking in any firm juridical footing.

This Court has recently explained the process of formulating an *Erie* guess as to the governing Louisiana substantive law in *Guerrera v. United Fin. Cas. Co.*, 161 F.4th 913, 916 (5th Cir. 2025):

> We review a district court's grant of a Rule 12(b)(6) motion to dismiss, grant of summary judgment, and issues of statutory interpretation *de novo*. *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306 (5th Cir. 2021) (Rule 12(b)(6) dismissal); *Romero v. City of Grapevine*, 888 F.3d 170, 175 (5th Cir. 2018) (summary judgment); *United States v. Lauderdale Cnty.*, 914 F.3d 960, 964 (5th Cir. 2019) (statutory interpretation).
>
> In this diversity case governed by Louisiana law, *de novo* review does not mean we write on a blank slate. "In determining Louisiana law, we 'should first look to final decisions of the Louisiana Supreme Court.' " *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quoting *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000)). "To the extent the supreme court has not resolved an issue, then we must make an *Erie* guess and determine as best we can what the Louisiana Supreme Court would decide." *Id.* (citation modified). In doing so, "we consider many of the same sources we use when guessing the law of other jurisdictions: decisions and reasoning of the state's courts; general rules of the jurisdiction, such as those governing statutory interpretation; and secondary sources like treatises." *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850–51 (5th Cir. 2019).
>
> Under Louisiana's "civilian methodology," "Louisiana's 'Constitution, codes, and statutes' are of paramount importance to its judges." *Id.* at 851 (quoting *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352

> F.3d 254, 260 (5th Cir. 2003)). So while the doctrine of stare decisis "is alien to the civilian system," *id.*, in the absence of Louisiana Supreme Court decisions, intermediate state court decisions provide "dat[a] for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise," *Renwick*, 901 F.3d at 611 [emphasis added].

Therefore, absent any definitive Louisiana Supreme Court caselaw requiring an expert opinion to support Ms. Petite's malpractice claims based on the failure of her family law attorneys, who knew she was a victim of her ex-husband's domestic violence, to simply inform her of her tort cause of action against her ex-husband, this Court looks to the relevant Louisiana intermediate appellate court rulings for guidance. Following *Ramp, supra*, the Louisiana First Circuit soon thereafter similarly held, "*There may also be cases in which the failure of the practitioner to use due care under any reasonable standard of conduct may be so obvious as to make expert testimony unnecessary.*" *Watkins v. Sheppard*, 278 So.2d 890, 892 (La. App. 1 Cir. 1973).

Forty-five (45) years ago, in *Viccinelli v. Causey*, 401 So.2d 1243 (La. App. 1 Cir. 1981), *writ den.*, 409 So.2d 615 (La. 1981), the appellate court, citing *Muse v. St. Paul Fire and Marine Insurance Company*, 328 So.2d 698 (La.App. 1st Cir. 1976), held that no expert testimony was needed to prove that an attorney was negligent in failing to inform his divorce client of the ramifications of her signing a

property settlement encumbered by a personal judgment against her ex-husband [The attorney, "*never conveyed to her knowledge elementary to even the most unskilled counsel, i. e., a money judgment creates a judicial mortgage against the judgment debtor's immovable property. This failure to fulfill his duty and responsibility as an attorney, whether the result of negligence or by design, cost his client $4,452.47 and is the very essence of malpractice*." J. Cole, concurring. *Id.*, at 1245]. In *Prestage v. Clark*, 97-0524 (La. App. 1 Cir. 12/28/98), 723 So. 2d 1086, 1091, *writ den. sub nom.*, *Prestige v. Clark*, 99-0234 (La. 3/26/99), 739 So. 2d 800, the First Circuit Court of Appeal explained:

> A lawyer should not neglect any legal matter entrusted to him. Rules of Professional Conduct, Rule 1.1; *Louisiana State Bar Ass'n v. Causey,* 393 So.2d 88, 91 (La.1980). An attorney owes his client the duty of diligent investigation and research. Rules of Professional Conduct, Rule 1.3; *Finkelstein v. Collier,* 93–999 (La.App. 5th Cir.4/14/94), 636 So.2d 1053, 1058; *Dixon v. Perlman,* 528 So.2d 637, 642 (La.App. 2nd Cir.1988). The extent of the attorney's duty to the client may depend in part on the client's particular circumstances and situation. *Finkelstein,* 636 So.2d at 1058; *Dixon,* 528 So.2d at 642.

Citing *Prestage, supra*, the First Circuit said, "*An attorney owes his clients the duty of diligent investigation and research upon being hired for representation, especially in ongoing litigation.*" *Rock v. ATPIC Trucking Co*., 98-1420 (La. App. 1 Cir. 6/25/99), 739 So. 2d 874, 879. Later, in *Morgan v. Simon*, 2000-1556 (La. App. 3 Cir. 2/28/01), 780 So. 2d 626, 629, the appellate court discussed the general framework for a lawyer's malpractice liability:

> To state a claim for legal malpractice, the plaintiff must allege (1) the existence of an attorney-client relationship, (2) the attorney's negligence in his representation of the client, and (3) the loss to plaintiff as a result of the attorney's negligence. *Milligan v. Keele,* 610 So.2d 1087 (La.App. 3 Cir.1992), *writ denied,* 612 So.2d 98 (La.1993). An attorney is negligent if he fails to timely assert a viable claim or causes the loss of opportunity to assert a claim for recovery. *Jenkins v. St. Paul Fire & Marine Ins. Co.,* 422 So.2d 1109 (La.1982).

In *Davis v. United Parcel Service, Inc*., 427 So.2d 921, 926-927 (La. App. 3 Cir. 1983), *writ den*., 433 So.2d 1053 (La. 1983), a case particularly analogous to Ms. Petite's scenario here, the Louisiana Third Circuit Court of Appeal discussed the duty[5] of an attorney (Vallien) to inform a *tort* client of his available *workers' compensation remedies* related to the accident sued upon in the tort case- precisely the specie of negligent omission Ms. Petite alleges in her suit:

> In the case of *Ramp v. St. Paul Fire and Marine Insurance Company,* 263 La. 774, 269 So.2d 239 (1972), the court stated as follows:
>
> > *"An attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality. He is not required to exercise perfect judgment in every instance. However, the attorney's license to practice and his contract for employment hold out to the client that he possesses certain minimal skills, knowledge, and abilities. ...."*
>
> In this case, Vallien was on notice that Davis had some facial scar. Vallien owed Davis a duty to inform Davis of the disfigurement

[5] Although the appellate court found the defendant attorney negligent, without any supporting expert testimony, ultimately the defendant prevailed because the plaintiff failed to prove that this malpractice *caused him any loss*. Apparently, the only competing testimony by lawyer witnesses dealt with *causation*, and not the *duty* to inform the client. *See* discussion at 427 So.2d 921, 927-928.

> provision of the workmen's compensation statute and whether, in the opinion of Vallien, such statute would be applicable to the facts present. If Vallien felt that he would not have been successful in pursuing such a claim, he should not remain silent but he should so inform Davis and it would be Davis' decision whether he wanted to attempt the pursuit by employing another counsel or whether to abandon such claim upon the advice of Vallien. Vallien has the duty to inform his client of all possibilities and make recommendations thereon. If he fails to do this, he is not properly performing his duties in his representation of Davis. If he fails in this duty by remaining silent and allows prescription to run, he is negligent and may be held liable for any losses to Davis that were caused by such negligence. *Jenkins v. St. Paul Fire and Marine Insurance Co.,* supra. We conclude that Vallien was clearly negligent in this matter for not filing the claim, thus, the remaining question is whether such negligence caused any damages to Davis [emphasis added].

By deeming attorney Vallien negligent as a matter of law for not informing his client, who retained him *for a tort claim* following a traffic accident, that his client *also* had the right to pursue workers' compensation benefits for a scar likely caused by the same accident, the Third Circuit Court of Appeal pronounced the same obvious duty, cognizable by a lay jury, that Ms. Petite's lawyers Lowe and Hoffman breached here. Similarly, in *Smith v. Becnel*, 396 So.2d 444, 446 (La. App. 4 Cir. 1981), a case on all fours with Ms. Petite's malpractice claim here, the appellate court held that an attorney hired to handle a client's workers' compensation claim was also "*required to interview plaintiff in an attempt to learn all relevant facts, to consider the possibility of causes of action in addition to workmen's compensation and to advise plaintiff of these possibilities*."

Yet, even more compelling and convincing support for Ms. Petite's argument contesting Judge Lemelle's *Erie* guess mandating an expert witness backing her malpractice suit is found in another recent family law case involving an attorney's negligence connected to his divorce client's parallel domestic abuse tort case. The Louisiana Fifth Circuit Court of Appeal's opinion in *Haydel v. Mollere,* 24-566 (La. App. 5 Cir. 4/23/25), 414 So. 3d 1, 8–9, is especially pertinent, and, therefore, extensively quoted here:

> To prevail in a legal malpractice claim, the plaintiff must prove: (1) an attorney-client relationship; (2) the attorney was negligent in his representation of his client; and (3) the negligence caused the plaintiff's loss. *Willis v. Meilleur*, 11-705 (La. App. 5 Cir. 5/31/12), 96 So.3d 1259, 1270, *writ denied*, 12-2078 (La. 11/16/12), 102 So.3d 42, *citing Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129, 138. The standard of practice that an attorney must exercise in the representation of his client is that degree of care, skill, and diligence, which is exercised by prudent practicing attorneys in the locality. *MB Industries*, 74 So.3d at 1184, *citing Ramp v. St. Paul Fire and Marine Insurance Company,* 263 La. 774, 269 So.2d 239, 244 (1972). Plaintiffs often retain an expert witness both to establish the standard of care for prudent attorneys in the relevant locality and to show that the attorney's actions fell below the standard of care. *MB Industries, LLC,* 74 So.3d at 1184. In *Ramp,* 269 So.2d at 244, however, the Louisiana Supreme Court recognized that expert testimony is not always necessary; an expert is *not* necessary where the alleged legal malpractice is "obvious" or the defendant attorney committed "gross error."
>
> Ms. Haydel argues that according to well-settled law in Texas, she was required to pursue her personal injury claims against her ex-husband contemporaneously with the divorce proceeding. She cites to *Brinkman v. Brinkman*, *supra*, wherein the appeals court considered whether a wife's personal injury claims against her ex-husband should have been joined in their divorce proceedings. Ms. Brinkman filed a personal injury lawsuit against her ex-husband after he physically assaulted her

and caused permanent damage to two discs in her neck. The husband filed divorce proceedings and Ms. Brinkman counter-sued alleging cruel treatment as grounds for the divorce. The parties eventually entered into an agreed divorce decree. Ms. Brinkman then filed her personal injury lawsuit against her ex-husband, and he filed a motion for summary judgment arguing that her claims were barred under the doctrine of *res judicata*.

The trial court granted the motion, and the appellate court affirmed the ruling finding that Ms. Brinkman should have brought her personal injury claims as part of the divorce proceeding because the assault was at issue in the proceedings. In reaching this conclusion, the *Brinkman* court relied on the Texas Supreme Court's decision in *Twyman v. Twyman*, 855 S.W.2d 619, 625 n.17 (Tex. 1993), wherein the Supreme Court noted that it anticipated interspousal tort claims and divorce proceedings would remain separate only where the facts supporting the tort action are different from those supporting a petition for divorce. In upholding the application of *res judicata* to Ms. Brinkman's personal injury claims, the appellate court held that "[b]ecause Ms. Brinkman knew about her personal injury claim against Mr. Brinkman and used it to her advantage in the divorce proceeding, the claim should have been joined with the divorce action." *Brinkman*, 966 S.W.2d at 783; *see also McNair v. McNair*, 2023 WL 4072829 (Tex.App.—Dallas 2023).

Mr. Becnel does not dispute that he had an attorney-client relationship with Ms. Haydel. And he does not cite to any evidence in the record to counter Ms. Haydel's affidavit stating that both Mr. Becnel and Mr. Mollere advised her to pursue her personal injury claims in a separate proceeding. Further, Mr. Becnel does not attempt to cite to any cases or law in Texas to counter the *Twyman, Brinkman*, and *McNair* cases cited by Ms. Haydel. These cases indicate that Mr. Becnel should have advised her to pursue her personal injury claims in her divorce proceedings because she sought and obtained a divorce based on the same assault that served as the grounds for her personal injury claims. Mr. Becnel's only response is a conclusory argument that no exception of *res judicata* was filed in the Texas personal injury lawsuit and it is speculative whether a Texas court would have granted the exception.

Ms. Haydel also argues that this matter involves an issue of obvious negligence that does not require expert testimony to establish the

> standard of care or a breach of that standard. Ms. Haydel argues that this matter is similar to cases involving obvious negligence where an attorney fails to investigate the correct date of prescription and allows the claim to prescribe, and expert testimony is not required. *See, e.g. Watkins v. Sheppard*, 278 So.2d 890, 892 (La. App. 1st Cir. 1973). We agree. The failure to advise Ms. Haydel to include her personal injury claims in her divorce proceedings allowed her claims to become subject to dismissal pursuant to the doctrine of *res judicata*, just as the client's claims in *Watkins* were subject to dismissal pursuant to prescription. Also, Mr. Becnel does not argue on appeal that expert testimony is required for Ms. Haydel to satisfy her burden of proof.
>
> Accordingly, we find that Ms. Haydel met her burden of proof to establish that Mr. Becnel owed a duty of care and breached that duty. Thus, the trial court did not err by granting summary judgment on the issue of negligence [emphasis added].

In surmising what the Louisiana Supreme Court would pronounce Louisiana law to be so regarding any expert testimony requirement anchoring Ms. Petite's legal malpractice cause of action, in addition to the state's appellate jurisprudence, this Court will "*consider many of the same sources we use when guessing the law of other jurisdictions: decisions and reasoning of the state's courts; general rules of the jurisdiction, such as those governing statutory interpretation; and secondary sources like treatises.*" *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850–51 (5th Cir. 2019) [emphasis added]. In this respect, the legal treatises also bolster Ms. Petite's position that attorneys Lowe and Hoffman's legal duty to simply inform her of her La. C.C. art. 2315.8 (A) domestic abuse tort claim was

cognizable and understandable by a lay jury without any concurrent legal experts weighing in.

Legal publications for years have reminded family law attorneys that domestic violence victims should sue their abusers.[6] In Frederica L. Lehrman, *Uncovering the Hidden Tort: Domestic Violence May Provide Grounds for Civil Action Against Abusers*, 82-SEP A.B.A.J. 82 (September, 1996), it is noted that:

> The concepts of tort law always have fit acts of domestic violence like a hand in a glove.
>
> It is, for instance, a classic example of assault for someone to raise a fist or a knife or a candlestick over the head of a spouse or intimate partner and threaten: "If I can't have you, nobody will!"
>
> Tort law is becoming a more important weapon in fighting domestic violence, partly because the nearly total abrogation of the common-law doctrine of interspousal tort immunity has made such actions easier to pursue.
>
> Moreover, the growing awareness of the cost of domestic violence to society has helped make the legal system more receptive to injured people seeking to hold their partners civilly liable for acts of domestic violence.

---

[6] *See, e.g.,* Clare Dalton, *Domestic Violence, Domestic Torts and Divorce, Constrains and Possibilities*, 31 NEW ENGLAND L. REV. 319 (1997); Mercedes Fort, *A New Tort: Domestic Violence Gets the Status it Deserves in Jewitt v. Jewitt*, 21 S. ILL. LAW J. 355 (1997); Kristyn J. Krohse, *No Longer Following the Rule of Thumb—What to Do With Domestic Torts and Divorce Claims,* 1997 U. ILL. L.REV. 923 (1997); Meredith L. Taylor, *North Carolina's Recognition of Tort Liability for the Intentional Infliction of Emotional Distress During Marriage*, 32 WAKE FOREST L. REV. 1261 (1997); James T.R. Jones, *Integrating Domestic Violence Issues Into the Law School Torts Curriculum*, 47 (1) LOY. L. REV. 59 (Spring, 2001); Nick Roumel & Lillian K. Saba, *Marital Torts Can Be a Valuable Tool in a Divorce Case,* 98-JUL MICH. B.J. 22 (July, 2019); Camille Carey, *Domestic Violence Torts: Righting a Civil Wrong*, 62 U. KAN. L. REV. 695 (March, 2014).

R. Keith Perkins, DOMESTIC TORTS: CIVIL LAWSUITS ARISING FROM CRIMINAL CONDUCT WITHIN FAMILY RELATIONSHIPS § 1.12 (Thompson Reuters, 2nd Ed. 2018), is right on point:

> Perhaps the most motivating reason as to why attorneys must become better aware of domestic torts is to avoid committing malpractice.
>
> Imagine the following scenario. A woman is a victim of domestic violence committed by her husband. As a result, she has sustained physical and emotional injuries…The woman seeks legal help by consulting with an attorney to file for divorce. After informing her attorney of the foregoing facts, the woman hires the attorney and pays a financial retainer. The laws of her jurisdiction permit a domestic tort action. However, the attorney proceeds with finalizing her divorce *without ever informing her* that she and her children might also have a right to pursue domestic tort claims that may have a dramatic financial impact on the property division in the divorce. This attorney is in serious risk of causing legal malpractice with potentially millions of dollars in damages at stake [*italics* in original, emphasis added].

The same warnings are found in Isabella Scott, DOMESTIC VIOLENCE PRACTICE AND PROCEDURE §§2:234 & 2:237 (Thompson Reuters, 2018 Ed.):

> **§2:234 Legal malpractice**.
>
> The practitioner owes the same duties to a client who is a victim of domestic violence as to any other client. A practitioner representing such a client must consider all possible legal actions and remedies such a protective orders, criminal prosecutions, and civil tort suits among others. The failure to pursue remedies in the client's best interest may constitute legal malpractice.
>
> * * *
>
> **§2:237 Failure to identify or prosecute domestic violence causes of action.**
>
> * * *
>
> The practitioner competently can represent clients who are injured by domestic violence by advising clients of all available legal and

> equitable remedies. If the elements which may comprise a civil tort are present, the practitioner should inform the client of this fact [internal footnotes omitted, emphasis added].

And, once again, the ABA's Family Law Section most recently sounded the same alerts to family law lawyers like Appellees Lowe and Hoffman in R. Keith Perkins, *Remember: Intimate Partner Violence Creates Domestic Tort Claims*, 47 FALL FAM. ADV. 24, 24-27 (Fall, 2024):

> Intimate partner violence can be absolutely devastating for the victim and leave them feeling shattered, hopeless, and injured (both emotionally and physically). Nearly all victims wonder, "What can I do about it?" If you are the attorney for a victim of intimate partner violence, do you know how to respond? What legal rights do victims of domestic violence have?
>
> Remember somewhere back in time in high school you likely learned about Newton's Third Law of Physics: for every action there is an equal and opposite reaction. Likewise, family law attorneys need to remember a similar statement may also be said about intimate partner violence: for every act of domestic violence, the victim may have the right to an equal and opposite legal reaction--a domestic tort claim against the abuser.
>
> * * *
>
> **Why Are Domestic Tort Claims So Big? Punitive Damages**
>
> You are likely aware of common personal injury lawsuits (e.g., car accidents), which primarily focus only on "compensatory" damages, such as pain and suffering, medical expenses, and economic losses. The big difference by comparison is that domestic tort cases will also include "punitive" damages. Why? Punitive damages are additional damages designed to punish and deter intentional, evil-minded conduct, which is exactly what domestic violence and divorce injuries are.
>
> Because of the abuser's "evil-minded conduct," additional questions must also be addressed, such as "What is it going to take to financially punish this man?" "How much money does he have? "What are *all* his assets, both marital *and personal*?" The full extent of all his wealth becomes relevant and

discoverable. Ironically, when punitive damages are included in domestic tort cases, an abuser's wealth works against him! Punitive damages are specifically designed to both financially punish the abuser, as well as be large enough to send a strong message of deterrence to others in society. The public policy goal is to stop this man--and anyone else like him--from ever committing another domestic tort again.

**Why Is It Critical for Divorce Attorneys to Know about Domestic Tort Claims Now?**

Statistically, there are nearly 1 million divorces in the United States every year, and, simultaneously 2 to 4 million incidents of domestic violence occur every year. Logically, there would be expected a significant overlap of divorce cases in which domestic violence is involved. Women today have a powerful voice and want to hold abusers personally accountable. They want to make sure that there's a change--domestic violence is no longer tolerated or kept silent. Domestic tort and divorce-injury claims can be a major part of the answer.

***High Percentage of Women Affected***

Two major studies both revealed that a staggering 42 percent of divorced women report that domestic violence was a major factor. (*With This Ring: National Survey on Marriages in America*, 2005; and *Oklahoma Baseline Survey on Marriage and Divorce*, 2001). These studies predict that on average four out of 10 of your female divorce clients will say, *if asked by their lawyer*, that domestic violence was a major factor in causing their divorce. Therefore, the critical issues become (1) are you asking your clients the right questions, and (2) are you providing your clients with the right legal services?

***Two Key Ethical Duties: Duty to Inquire and Duty to Inform***

Every state has their own ethics laws, which are usually based on the American Bar Association Model Rules of Professional Conduct. Rule 1.1 states: “The lawyer shall provide “competent, representation,” including ““thoroughness.” The comment clarifies that this includes “inquiry into” the factual basis of the client's legal problem and must “keep abreast of changes in laws.” Furthermore, Rule 1.4 states that “a lawyer shall explain a matter” to the reasonable extent necessary to permit the client to make “informed decisions” regarding that representation. The bottom line is that lawyers have

ethical duties to "ask" and to "inform." Failure to do so could be legal malpractice.

***The Trap: Settlement Agreements That Ignore Divorce-Injury Claims***

According to a survey conducted by the American Academy of Matrimonial Lawyers, 95 percent of divorce cases are settled out of court and avoid a trial. Most settlement agreements contain a clause that waives all potential claims. This creates a potential trap for inattentive family law attorneys. Are divorce clients signing settlement agreements without their attorney adequately "asking" and "informing" of their potential rights, causing clients to unknowingly give up their rights to divorce-injury claims? Such is likely malpractice.

* * *

***Legal Malpractice Cases***

Several appellate opinions portend that legal malpractice cases against divorce attorneys for failure to properly advise clients of their claims against spouses may soon be coming around the bend.

The Texas Court of Appeals held in *Moore v. Yarbrough*, 993 S.W.2d 760, (Ct.App.Texas, Amarillo, 1999) held that divorce attorneys who failed to properly advise a wife who was the victim of domestic violence by her husband regarding the impact of finalizing her divorce had on her personal-injury claims may give rise to legal malpractice by the divorce attorneys. Specifically, the court found that the divorce attorneys had a duty to advise the wife of the possibility that res-judicata after finalizing her divorce could cause wife to lose her personal injury claims arising from domestic violence--and failure to do so may be legal malpractice.

Additional appellate court cases warn of potential legal malpractice claims against divorce attorneys for failure to properly investigate, inform, and advise the client of potential claims; failure to conduct discovery into potential claims; and failure to properly inform client prior to accepting settlement agreements. *See, Stephen v. Sallaz & Gatewood, Chtd.*, 150 Idaho 521, 248 P.3d 1256 (2011); *Wolfe v. Wolf Eyeglasses*, 375 Ill.App.3d 702 (2007). The key seems to be that when a divorce attorney fails to properly inquire or advise a client of their potential rights (e.g., sue an abusive spouse), the attorney's

failure may not have allowed the client to make a sufficiently informed decision when accepting the divorce settlement agreement. Consequently, the divorce attorney may be responsible to the client for paying the domestic tort judgment.

Here, it is vital to remember that the value of domestic tort claims can be extremely large--and capable of producing catastrophic legal malpractice claims. How catastrophic, you may ask?

In 2019, there was a $50 million legal malpractice appellate opinion that occurred in Arizona, arising out of a domestic tort claim. *Gibson v. Theut*, 246 Ariz. 297 (Ariz. App. Div 1, 2019, *depublished* 2020). Admittedly the facts of this case were unusual (involving the murder of the spouse). The court found the attorney "failed to address or even advise" their client as to their legal rights because the attorney had "justified his decision on the basis that the chances of the defendant ever having any money or was collectible were slim." The Arizona Court of Appeals held that it was a proper fact question whether the attorney is liable for the judgment for failing to properly advise the client. Not surprisingly, soon after the Court of Appeal's opinion, the attorney settled the legal malpractice case for an undisclosed amount. Although this case has since been depublished, it should nevertheless serve as a loud warning to attorneys as what catastrophic legal malpractice may be for failure to adequately inquire or inform clients regarding potential domestic tort/divorce-injury claims.

***Simple Solution to Avoid Legal Malpractice***

Fortunately, there is a simple solution to help reduce your malpractice risk! Wise divorce attorneys can easily add a simple "Inquire & Inform" divorce injury assessment form to all new client intakes. This form combines both of your ethical duties to "inquire" and to "inform." It asks several questions designed to ascertain whether the client may have a potential divorce-injury claim. It also informs your clients of their legal rights and options regarding potential divorce-injury claims. This form can help you make sure you are fulfilling your ethical responsibilities and quickly ascertain whether your client may need additional divorce-injury services. Regardless of whether or not you ever intend to add representation of divorce-injury claims to your own law practice, you should nevertheless immediately incorporate the use of this form to protect yourself from malpractice liability for failure to inquire and

> inform. You should have every client fill out this form at the very first interview.
>
> * * *
>
> Divorce attorneys, especially those who represent women clients, can be a key player in the fight against intimate partner violence and helping clients understand potential legal rights to sue an abusive partner or spouse. Family law attorneys should always inquire and inform their clients of potential tort injury claims or otherwise risk legal malpractice liability. Victims of intimate partner violence have the right to an equal and opposite reaction to abuse—and, as their attorney, you are in the best position to inform them of potential domestic tort/divorce-injury claims and how they can legally and effectively fight back [emphasis added].

Therefore, for all of these reasons, Ms. Petite shows that the District Court's *Erie* guess that the Louisiana Supreme Court would require, as a matter of law, expert testimony supporting her claim that attorneys Lowe and Hoffman had, and breached, a legal duty to timely inform her that she had a tort claim for compensatory and exemplary damages against her ex-husband for domestic abuse is legal error unsupportable by any cogent analysis of the applicable test for such a conclusion under *Guerrera v. United Fin. Cas. Co.*, 161 F.4th 913, 916 (5th Cir. 2025).

**2) If this Court's *de novo* review of the District Court's *Erie* guess does not result in a wholly contrary conclusion that the Louisiana Supreme Court would agree that no such expert testimony is necessary for Ms. Petite's malpractice claim to survive, the Court should certify the question to the Louisiana Supreme Court for a definitive answer.**

Ms. Petite respectfully realizes that her skepticism of the trial court's *Erie* guess may not be fully embraced by the Court; but, at the same time, she is confident

that the Court will not find a sufficiently legitimate Louisiana footing for Judge Lemelle's outcome determinative commitment to the expert requirement. Given that outcome, Ms. Petite urges the Court to certify the question to the Louisiana Supreme Court. In 2025, the Fifth Circuit certified a question regarding the immunity status of an employee providing emergency activities to the Louisiana Supreme Court in *Breaux v. Worrell*, 141 F.4th 712, 718 (5th Cir. 2025), *certified question accepted*, 2025-00856 (La. 10/14/25), 420 So. 3d 679, *certified question answered*, 2025-00856 (La. 4/10/26). In *Breaux*, the district court granted the defendants' summary judgment motion based on its *Erie* guess, and the plaintiffs appealed. Therein, as in the case at bar, because there was no "definitive answer" found in Louisiana law, and "*any Erie guess would involve more divining than discerning*[7]" this Court explained the criteria for such a certification, which it ordered:

> This court considers the following factors when deciding whether to certify a question to a state supreme court:
>
> (1) the closeness of the question(s);
>
> (2) the degree to which considerations of federal-state comity are relevant in light of the particular issue and case to be decided; and
>
> (3) practical considerations, such as the possibility of significant delay or difficulty of framing the issue so as to produce a helpful response on the part of the state court.

---

[7] At 141 F. 4th 712, 717, quoting *Sanders v. Boeing Co.*, 68 F.4th 977, 982 (5th Cir. 2023).

*See also Johnson v. Miller*, 98 F.4th 580 (5th Cir. 2024); *Cuevas Machine Company v. Calgon Carbon Corporation*, ___ F.4th _____, 2026 WL 1020559 (5th Cir. 2026).

Ms. Petite submits that the documented dearth of persuasive Louisiana authority on the central issue in this appeal regarding the expert requirement, as in *Breaux,* in light of the certification factors cited therein, fully supports a decision to send this crucial question for resolution to the Louisiana Supreme Court, under Rule XII, Sec. 1, of the Supreme Court. Notably, in answering the certified question, the Supreme Court rejected the federal district court's *Erie* guess *in toto*. *Breaux v. Worrell*, 2025-00856 (La. 4/10/26), ____ So.3d ____, 2026 WL 972211.

Ms. Petite suggests that the following question be certified:

> *Is an expert opinion necessary as a matter of Louisiana law to support a client's legal malpractice claim that her attorneys representing her in a Louisiana divorce and child custody case, who knew that she was a victim of her ex-husband's domestic abuse and filed pleadings in her case documenting the abuse, were negligent in failing to inform her that La. C.C. art. 2315.8 (A) provided her a tort cause of action for compensatory and exemplary damages, and thus caused her tort claim to prescribe?*

**3) The District Court erred in granting the Attorneys' summary judgment motion based on the erroneous *Erie* guess, discussed, *supra*, the wrongful focus on the moot 2019 Lagarde issues, and the erroneous denial of Ms. Petite's motion *in limine*, *infra*; and, in then denying Ms. Petite's Rule 59(e) motion filed to correct the court's mistaken analysis.**

The Attorneys' summary judgment motion, ROA. 466-651, was granted on July 8, 2025, ROA.768-780, despite Ms. Petite's opposition. ROA.667-713. This Court reviews the summary judgment *de novo*, viewing the evidence in the light most favorable to Ms. Petite. *Congious By and Through Hammond v. Shaw*, 170 F.4th 960 (5th Cir. 2026). Rulings on Rule 59 motions are reviewed for an abuse of discretion. *Jennings v. Watson*, 11 F.4th 335, 345 (5th Cir. 2021). Because a) the trial court's *Erie* guess as to the requirement of expert testimony, as discussed, *supra*, was wrong; b) the motion in limine should have been granted; and, c) the trial court completely misconstrued the basis of Ms. Petite's malpractice claims, as set forth in her Rule 59(e) motion to alter or amend, ROA. 781-797, the denial of the Rule 59(e) motion was likewise an abuse of discretion. Judge Lemelle, in denying the Attorneys' Rule 12 (b)(6) motion to dismiss on May 2, 2025, had already rejected the Attorneys' misguided arguments regarding the significance of anything happening in 2019 on Jesse Lagarde's watch. ROA.442-452.

**4) The District Court abused its discretion in denying Ms. Petite's motion *in limine* to exclude Kyle Schonekas's purported expert opinions attached to Attorney's summary judgment motion.**

Judge Lemelle on June 18, 2026, denied, ROA.736, Ms. Petite's motion *in limine*. ROA.652-666. This Court reviews the denial of Ms. Petite's motion *in limine* to preclude Mr. Schonekas's opinions for an abuse of discretion. *Gibson, Inc. v. Armadillo Distribution Enterprises*, 107 F.4th 441 (5th Cir. 2024). While Mr.

Schonekas seems to be an experienced attorney involved over the years in a variety of litigation scenarios, there is absolutely nothing shown in his report that even remotely suggests that he is the least bit qualified to step into the shoes of a divorce/child custody lawyer representing a domestic violence victim to opine on whether a competent attorney in that situation is required to advise his client that she has a tort claim for compensatory and exemplary damages against her ex-husband under La. Civil Code art. 2315.8. ROA.466-651. Any such tendered opinion is inadmissible under Rule 702, F.R.E., because it is unreliable and irrelevant. A witness may have nifty and impressible credentials, but if they do not qualify him to reliably and relevantly opine *on the particular case at hand*, his testimony is precluded. *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999); *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007); *Comardelle v. Pennsylvania General Insurance Company*, 76 F. Supp. 3d 628 (E.D. La. 2015); *Schindler v. Dravo Basic Materials Company, Inc.*, No. 17-CV-13013, 2019 WL 446567 (E.D. La. February 5, 2019). Therefore, his opinions should have been excluded from any consideration in the Attorneys' summary judgment motion.

## CONCLUSION

Wherefore, the Court is respectfully urged to reverse the July 9, 2025, summary judgment dismissing Ms. Petite's claims with prejudice. Alternatively, if necessary to ascertain a definitive answer to the question of whether Louisiana law

required Ms. Petite to support her legal malpractice claims with expert testimony, the Court is urged to certify the question to the Louisiana Supreme Court. Alternatively, as well, the Court is urged to reverse the denial of Ms. Petite's Rule 59 (e) motion to alter or amend the July 8-9, 2025, summary judgment, and the denial of Ms. Petite's motion *in limine* to exclude the purported expert opinion of Kyle Schonekas. Finally, the Court is urged to remand the case to the trial court, directing such relief as it warranted by the Court's other rulings in this appeal.

## CERTIFICATE OF SERVICE

I hereby certify that copies of this *Appellant's Brief (Amended)* were served on all opposing counsel through the Courts CM/ECF system, this May 6, 2026.

Respectfully submitted,
*Richard Lynn Ducote*
Richard Lynn Ducote, Esq. (La. 5111)
Counsel for Appellant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this *Appellant's Brief (Amended)* contains 10, 551 words in compliance with Rule 32 (a)(7), F.R.A.P., excluding those parts set forth in Rule 32(f), F.R.A.P. I further certify that the proportionally spaced type, Times New Roman 14 point, complies with Rules 32(5) and 32(6), F.R.A.P.

Respectfully submitted,

*Richard Lynn Ducote*

Richard Lynn Ducote, Esq. (La. 5111)
Counsel for Appellant
318 East Boston Street, Fl. 2
Covington, LA 70433
(985) 898-2755
(985) 898-2754 Fax
rducote@ducotelaw.com
service@ducotelaw.com
May 6, 2026